# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| CO-MO COMM, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:16-CV-04276-BCW |
| CITY OF COLUMBIA, MISSOURI, | ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Plaintiff Co-Mo Comm, Inc.'s Motion for Preliminary Injunction (Doc. #2). The Court, being duly advised of the premises, denies said motion.

## BACKGROUND

Plaintiff Co-Mo Comm, Inc. ("Co-Mo") asserts claims against Defendant City of Columbia, Missouri ("City") related to the use of the "CO-MO CONNECT" mark. Co-Mo seeks a preliminary injunction against the City's use of "COMO CONNECT" as the tradename for its bus system. The Court held a hearing and received evidence on the motion for preliminary injunction on January 24, 2017.

As stipulated by the parties, Co-Mo and Co-Mo Electric Cooperative, Inc. are Missouri corporations with their principal places of business in Tipton, Missouri. Co-Mo is a wholly-owned subsidiary of Co-Mo Electric. The City is a municipal Missouri corporation, located within Boone County, Missouri.

Co-Mo's parent company, Co-Mo Electric, has conducted business under the same name since 1939. In 2010, Co-Mo's board approved a pilot project to make fiber-to-home broadband network services available in certain parts of Co-Mo Electric's service area. This network service project was referred to as Co-Mo Connect, in association with Co-Mo Electric's brand goodwill,

1

and in description of network services that were intended to connect homes in rural areas to high-speed fiber broadband network connections elsewhere. Co-Mo began soliciting customers using the Co-Mo Connect mark as early as February 2011. Co-Mo registered the mark under federal law as of July 7, 2015 and under Missouri law as of March 25, 2015, in reference to its Co-Mo Connect-branded internet, television, and telephone services. The mark is displayed as:



Co-Mo maintains a website for its Co-Mo Connect products and services, http://www.co-mo.net/Co-Mo_Connect, which shows the above Co-Mo Connect mark throughout.

In 2013, the City proposed a plan to overhaul its bus transit system. The proposed project involved changing existing routes, as well as re-branding. The City referred to this initiative as COMO CONNECT, and did not undertake a formal trademark search before using COMO CONNECT publicly in promotion efforts.

In August 2013, a City employee conducted a web search to determine whether the domain name comoconnect.com was available. In the course of this search, the City learned of Co-Mo's website, and the attendant use of the Co-Mo Connect mark in connection with Co-Mo's communications products and services. The City did not contact Co-Mo upon this discovery.

On February 17, 2014, the City approved the bus system improvement initiative for implementation. On June 2, 2014, the City formally rebranded the bus system update as COMO CONNECT, which went operational on August 4, 2014. The City promoted the bus transit improvement initiative using the following mark that was designed in cooperation with a college marketing class:



The COMO CONNECT mark appears in the City's advertisements for the bus system overhaul, on the buses and stops within the system, and the bus system website, https://www.comoconnect.org/.

The City's COMO CONNECT mark and associated services are unrelated to Co-Mo's Co-Mo Connect mark and associated services, and vice versa. On October 1, 2015, Co-Mo sent a letter to the City about its use of COMO CONNECT. The City did not respond.

On December 3, 2015, Co-Mo sent the City a cease and desist letter in reference to the City's use of COMO CONNECT. The City sent a written response to this letter on February 22, 2016, after meeting with Co-Mo's CEO, Ken Johnson. Co-Mo has used and is continuing to use its registered mark Co-Mo Connect, and the City has used and is continuing to use the mark COMO CONNECT.

**LEGAL STANDARD**

A district court considering a motion for preliminary injunction applies the following factor test: (1) the movant's probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) "[t]he balance between this harm and the injury that granting the injunction will inflict on other interested parties;" and (4) whether injunctive relief is in the public interest. United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1178-79 (8th Cir. 1998) (citing Sanborn Mfg. Co. v. Campbell Hausfeld / Scott Fetzer Co., 997 F.2d 484, 485-86 (8th Cir. 1993) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981))). None of these four factors "is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." Id.

**ANALYSIS**

Co-Mo seeks preliminary and permanent injunctive relief with respect to the City's use of COMO CONNECT. (Doc. #1). Co-Mo alleges claims for trademark infringement and false designation of origin arising under federal law, and trademark infringement, trademark dilution, and unfair competition under Missouri law. The instant motion seeking injunctive relief is asserted under Fed. R. Civ. P. 65, 15 U.S.C. § 1116(a), and Mo. Rev. Stat. § 471.061. Because Co-Mo seeks injunctive relief under both federal and Missouri law, the Court considers the propriety of injunctive relief through separate, though similar, inquiries.

### A. Co-Mo HAS NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS.

The Court first considers the likelihood of Co-Mo's success on the merits of its federal trademark claims. Section 1116 of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, provides for injunctive relief, "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a).

"The Lanham Act imposes civil liability on any person who . . . without the consent of the registrant . . . use[s] in commerce any reproduction . . . or colorable imitation of a registered mark." Sensient Techs. Corp. v. SensoryEffects Flavor Co., 613 F.3d 754, 760 (8th Cir. 2010) (citing 15 U.S.C. § 1114(1)(a)). Additionally, § 1125 provides for liability against "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of goods, services, or commercial activities." Id. (citing 15 U.S.C. § 1125(a)(1)(A)).

Under federal law, an infringing use of a mark is a use that "is likely to cause confusion, or to cause mistake, or to deceive." Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242, 1246 n.3 (8th Cir. 1994) (citing 15 U.S.C. § 1114(1)(a)). To establish a trademark infringement claim, Co-Mo must show a likelihood of success on the merits with respect to the following elements: (1) ownership of or rights to the trademark at issue; and (2) "that the defendant has used the mark in connection with goods or services in a manner likely to cause consumer confusion as to the source or sponsorship of the goods or services." Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church, 634 F.3d 1005, 1009 (8th Cir. 2011) (citing Davis v. Walt Disney Co., 430 F.3d 901, 903 (8th Cir. 2005)).

"A 'trademark' is any word, name, symbol, or device, or any combination thereof – used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC, 745 F.3d 877, 882 (8th Cir. 2014) (citing 15 U.S.C. § 1127)). An "owner of a trademark used in commerce" may apply for federal registration. Id.

A trademark may be registered "[i]f the word used to denominate the goods is arbitrary, unique, distinct, and non-descriptive . . . ." Sweetarts v. Sunline, Inc., 380 F.2d 923, 926 (8th Cir. 1967) (citation omitted). Registration may not be granted to a mark that is "merely descriptive, unless the mark has become distinctive of the registrant's goods in commerce." Lovely Skin, 745 F.3d at 882 (citing 15 U.S.C. §§ 1052(e)-(f)). A mark's distinctiveness, or secondary meaning, is acquired where "in the consumer's mind the mark has become associated with a particular source." Id. (citing Co-Rect Prods., Inc. v. Marvy! Advert. Photography, Inc., 780 F.2d 1324, 1332-33 (8th Cir. 1985)).

"A mark registered . . . is presumed to be valid . . . and the presumption of validity is a strong one." Lovely Skin, 745 F.3d at 882 (citing Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1008, 1115 (9th Cir. 2010)). This presumption of validity "includes a presumption that the registered mark has acquired distinctiveness, or secondary meaning, at the time of its registration." Lovely Skin, 745 F.3d at 882-883 (citing Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 870 (8th Cir. 1994)). However, a putative infringer may rebut the presumption of validity by asserting that the trademark registration should be canceled because it was improperly registered in the first place. Lovely Skin, 745 F.3d at 883.

In this case, Co-Mo relies on its 2015 federal registration of the Co-Mo Connect mark to support a presumption of validity, and asserts that the mark is suggestive in nature, such that it is inherently distinct under federal law. The City asserts that Co-Mo's rights to the mark, and the strength of the mark, are not such forgone conclusions as Co-Mo would suggest. While Co-Mo asserts that the Co-Mo Connect mark is suggestive, and thus inherently distinctive, the City argues that the mark is merely descriptive. A descriptive mark is eligible for trademark protection only if the mark has acquired a secondary meaning. Co-Rect Prods., 780 F.2d at 1329.

At this stage, the Court is not inclined to make a determination upon the proper categorization equating to the strength of the Co-Mo Connect mark, or make any determination relative to secondary meaning, in spite of the presumption of validity upon which Co-Mo relies. Though the Court recognizes that the Co-Mo Connect mark refers to part of the Co-Mo company name, and may, in a general sense, "suggest" Co-Mo's role in connecting parts of rural Missouri, the Court declines to find the Co-Mo Connect mark inherently distinct. Notably, at this stage, the Court could equally conclude that the Co-Mo Connect mark "describes" Co-Mo's services in connecting parts of rural Missouri to other areas. Furthermore, the record at this stage does not necessarily support Co-Mo's asserted priority to the Co-Mo Connect mark for the time period

6

before the 2015 federal registration. Hana Fin., Inc. v. Hana Bank, 135 S. Ct. 907, 909 (2015) ("The party who first uses a mark in commerce is said to have priority over other users."). Consequently, Co-Mo has not established a likelihood of success on the merits, on the basis of the first element of a federal infringement claim, such that the Court declines to discuss the likelihood of confusion in this context.

Notwithstanding the Court's conclusion under federal law, the Court considers the Co-Mo's likelihood of success with respect to its state infringement claim. Mo. Rev. Stat. § 417.061(1) "provides that the likelihood of injury to business reputation or of dilution of the distinctive quality of a mark . . . shall be a ground for injunctive relief." Frosty Treats, Inc. v. Sony Comput. Entm't, 426 F.3d 1001, 1011 (8th Cir. 2005) (citing Mo. Rev. Stat. § 417.061(1)). Co-Mo's claim under § 417.061 requires it to show: (1) the trademark at issue is valid at common law; (2) the mark is distinctive; and (3) the City's "use of its name created a likelihood of dilution of the distinctive quality" of the Como Connect mark. Sensient Techs. Corp., 613 F.3d at 769.

As discussed in the context of Co-Mo's federal infringement claims, the record is insufficient at this stage for the Court to make any determination with regard to the categorization of the Co-Mo Connect mark. The same is true with respect to the second element, regarding the issue of distinctiveness, relative to the Co-Mo Connect mark. Therefore, because the current record does not support that Co-Mo is likely to succeed on the first and second element of its Missouri infringement claim, the Court declines to consider the dilution element of Co-Mo's state claim. The Dataphase likelihood of success factor weighs in the City's favor.

B. **Co-Mo HAS NOT ESTABLISHED IRREPARABLE HARM.**

Despite the Court's conclusion in the context of the Dataphase factor relating to the likelihood of success on the merits, the irreparable harm factor suggests the Court should discuss

7

the issue of the likelihood of confusion. Specifically, even if a question remains regarding Co-Mo's rights to the Co-Mo Connect mark, if Co-Mo can show likelihood of confusion, it is entitled to a presumption of irreparable harm. Calvin Klein Cosmetics Corp. v. Lenox Labs, Inc., 815 F.2d 500, 505 (8th Cir. 1987).

The Eighth Circuit takes "an expansive interpretation of likelihood of confusion, extending protection against use of plaintiff's mark on any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." Anheuser-Busch, Inc. v. Balducci Publ'ns, 28 F.3d 769, 774 (8th Cir. 1994). To determine whether Co-Mo is entitled to protection against the City's allegedly subsequent use, the central inquiry is whether "a likelihood exists that consumers will be confused about the source of the allegedly infringing product." Hubbard Feeds, Inc. v. Animal Feed Supp., Inc., 182 F.3d 598, 602 (8th Cir. 1999).

To determine whether a likelihood of confusion exists, a court should consider the following non-dispositive factors: (1) the strength of the mark; (2) the similarity between the marks; (3) competition between the products; (4) the infringer's intent; (5) actual confusion; and (6) the product type, cost, and conditions of purchase. Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C., 393 F.3d 755, 759-760 (8th Cir. 2005). Notably, no particular factor is determinative and no particular factor should be given more weight than any other factor. Calvin Klein, 815 F.2d at 504 (citations omitted). "A realistic evaluation of consumer confusion must attempt to recreate the conditions in which buying decisions are made, and the court should try to determine not what it would do, but what a reasonable purchaser in market conditions would do." Calvin Klein, 815 F.2d at 504.

First, "a strong and distinctive trademark is entitled to greater protection than a weak or common place one." Frosty Treats, 426 F.3d at 1008. As discussed in the previous section, the

Court is not inclined to make any determination relative to the strength of the Co-Mo Connect mark, based on the limited record available at this stage. The strength of the mark factor weighs neutrally.

Second, the Court considers the degree of similarity between the marks at issue. The Court agrees with Co-Mo that, in appearance, the written versions of the word mark are distinguishable only by Co-Mo's use of a hyphen. Such a distinction is not apparent when examining the pronunciation or oral translation of the Co-Mo Connect mark and the COMO CONNECT mark. Moreover, the marks' appearances are similar in their symbolism. The degree of similarity between the marks weighs in Co-Mo's favor.

Third, with respect to competition between Co-Mo's broadband network services and the City's bus transit system, "[w]here products are closely related, less similarity in the trademarks is necessary to support a finding of infringement. Competitive proximity is one factor to be considered, even though infringement may be found in the absence of direct competition." SquirtCo. v. Seven-Up Co., 628 F.2d at 1086, 1091 (8th Cir. 1980) (internal citations omitted). In the Court's view, the parties in this case are not in direct competition in terms of either services provided or geographical area served. This factor thus weighs in the City's favor.

Fourth, the Court considers the intent of the City in adopting use of COMO CONNECT relative to the bus system revamp. During the evidentiary hearing, the City's transit and parking manager Drew Brooks testified that sometime in 2013, he or another city employee performed a Google search that hit upon the Co-Mo website. In the Court's view, this evidence is sufficient to impute knowledge to the City, but only with regard to its knowledge of the existence of the Co-Mo Connect mark elsewhere, in association with Co-Mo's products and services. Notwithstanding, the City's knowledge does not equate to bad intent, or an intent to ride on Co-Mo's good will, particularly when other businesses in the City incorporate geographical

reference to "como" in reference to the City itself and surrounding area. This factor weighs neutrally at this stage in the litigation.

Fifth, actual confusion is not essential to support an infringement claim, but actual confusion "is positive proof of likelihood of confusion." Id. During the evidentiary hearing, Co-Mo presented a few examples of actual confusion among customers. Although the Court notes that Co-Mo's evidence of actual confusion does not necessarily equate to "an appreciable number of ordinary purchasers" as might be required to establish actual confusion at trial, for purposes of the instant factor test, the Court finds in Co-Mo's favor on the issue of actual confusion. Sensient Techs., 613 F.3d at 768.

The final relevant factor is the overall conditions of purchase, including the degree of customer care. The instant services at issue in this case, rural network broadband and urban public transport, are unrelated. However, trademark infringement can occur despite a lack of competitive proximity. SquirtCo., 628 F.2d at 1091. This concept is particularly true under Missouri law, where "[t]he gravamen of a dilution complaint is that the defendant's continuing use of a mark similar to plaintiff's mark will inexorably have an adverse effect upon the value of plaintiff's mark, and that the plaintiff's mark will eventually be deprived of all distinctiveness." Sensient Techs., 613 F.3d at 769. Evidence presented during the hearing indicated a lack of customer satisfaction relative to the City's bus transit service, operating under the COMO CONNECT mark. However, it would seem that the decision to contract with a network broadband service would require a relatively high degree of customer care. Therefore, the City's use of COMO CONNECT on the side of a bus, which might lead a potential Co-Mo customer to conclude that Co-Mo is sponsoring the City's bus, or advertising on the City's bus, is of less import. Frosty Treats, 426 F.3d at 1010. Because decisions related to internet service provides

involve a relatively high degree of customer care, relative to cost comparisons and service options, this factor weighs in the City's favor.

Application of the above factor test does not establish a likelihood of confusion under the circumstances of this case, such that Co-Mo is not entitled to a presumption of irreparable harm. Irreparable harm occurs where the injury at issue is "both certain and great; it must be actual and not theoretical." Packard Elevator v. Interstate Commerce Comm'n, 782 F.2d 112, 115 (8th Cir. 1986). A party seeking injunctive relief "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief . . . ." Id.

The City argues that Co-Mo cannot establish the imminence necessary to trigger injunctive relief, since Co-Mo CEO Ken Johnson testified to knowledge regarding the City's use of COMO CONNECT relative to the City bus revamp project in 2014, yet Co-Mo did not initiate this lawsuit to protect the mark at issue until 2016. However, just as the Court is not inclined to draw any fact-based conclusions going to the merits of Co-Mo's claims about the likelihood of confusion, the Court is not inclined to draw any fact-based conclusions going to the merits of the City's laches defense at this early stage in the litigation.

Notwithstanding, in the Court's view, Co-Mo has not identified any certain injury which has already occurred or which will certainly occur. To the contrary, Co-Mo's motion seems aimed to limit the City's use of COMO CONNECT based on Co-Mo's research and hope to expand its service to the geographical area in closer proximity to Columbia, Missouri. Despite anecdotal evidence about some consumer's initial confusion about Co-Mo's association with the bus system, Co-Mo has not demonstrated a palpable customer loss, or anything beyond speculative loss of good will. The Court finds Co-Mo cannot establish irreparable harm based upon the current record.

### C. Co-Mo HAS NOT ESTABLISHED A RIGHT TO RELIEF BASED ON THE BALANCE OF POTENTIAL INJURY.

The next Dataphase factor asks the Court to weigh the harm to Co-Mo if the Court did not grant injunctive relief, against the harm to the City if the Court did grant injunctive relief. During the evidentiary hearing, the City offered testimony that preliminary injunctive relief in Co-Mo's favor would cost the city more than a million dollars to rebrand the bus transit system and advertisements. Co-Mo asserts that its potential harm in the absence of injunctive relief is far greater, in that the City is using the COMO CONNECT mark in connection with a service that has a less-than-stellar record among its common customers.

Indeed, the loss of business reputation and/or good will is arguably unquantifiable and thus of greater value on the balance of the equities. Therefore, if the Court evaluates this factor independently, Co-Mo's potential harm is greater than the City's. However, the Court is not convinced that the likelihood of customer confusion, and attendant potential loss of good will, is supported by the record, at least at this stage. Consequently, the Court must conclude that the City's potential economic loss if injunctive relief was granted weighs more heavily than Co-Mo's potential harm if injunctive relief is not granted, because Co-Mo has not established an actionable right to the mark, nor any actual reputational damage.

### D. Co-Mo HAS NOT ESTABLISHED A RIGHT TO RELIEF BASED ON PUBLIC INTEREST.

With respect to the issue of the public interest in reference to Co-Mo's motion for preliminary injunction, there exists a public interest in the enforcement of validly registered trademarks. Cmty of Christ Copyright Corp. v. Miller, No. 07-0543-CV-W-GAF, 2007 WL 4333192, at *3 (W.D. Mo. Dec. 7, 2007). Additionally, the public interest rests in protecting consumers from deception within the marketplace and promoting practices that incentivize business to procure good will by serving their customers. Park N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 190 (1985). Moreover, the Missouri legislature has determined that a

trademark owner is entitled to an injunction if his or her mark is diluted or infringed upon. Mo. Rev. Stat. § 417.061(1); Uncle B's Bakery, Inc. v. O'Rourke, 920 F. Supp. 1405, 1438 (N.D. Iowa 1996) (indicating that where a statute authorizes injunctive relief, the injunction serves the public interest embodied by the statute).

While the Court agrees with each of the above propositions, Co-Mo has not established an unassailable right to the Co-Mo Connect mark. Therefore, the public interest does not favor limiting use of a mark, which may discourage or deter economic development, based on a speculative right in a potential trademark. Consequently, the Court is guided by general principals of equitable relief which state that a preliminary injunction is a drastic remedy. The best course is to decline injunctive relief at this stage and allow the dispute to be resolved on its merits. Accordingly, it is hereby

ORDERED Plaintiff's Motion for Preliminary Injunction (Doc. #2) is DENIED.

IT IS SO ORDERED.

DATE: April 14, 2017  /s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT